Okey, C. J.
Diehl brought suit against Friester in the court of common pleas of Monroe county. The action was prosecuted on promissory notes and a real éstate mortgage to secure their payment, executed by Friester to Diehl; the prayer was for a judgment, and a sale of the land to satisfy the same; and at the December term, 1877, judgment was rendered for $1,442.50 and costs, and sucli order of sale was made. On November 17, 1877, while the suit was pending, Diehl obtained from the probate court of that county an injunction in the action, to restrain Friester from doing certain acts with respect to the property, and Friester was served with a copy of such order of the probate court; but no undertaking for such injunction was ever executed. On November 22, 1877, upon affidavit of Diehl that Friester was violating the injunction, the probate court 'caused the latter to be arrested, assessed against him a fine of $10 and costs, as for a contempt for disobeying the injunction, and in default of the payment of such fine and costs, he was, by order of such probate court, committed to the county jail, where he was confined for thirty days. Thereupon, Friester brought suit against Diehl in the court of common pleas of Monroe county, for false imprisonment, based on the above facts, and, at the June term, 1878, of that court, obtained a verdict and judgment for $245 and costs. At the same term Diehl showed to the court that the mortghged premises had been sold, in pursuance of the order of the court, and the proceeds applied in part satisfaction of the mortgage debt, leaving a balance of $1,092.18 on his aforesaid judgment; and thereupon, he moved the court that so much of his judgment as would equal the judgment of Friester should be set off against the same in satisfaction thereof. This motion was sustained as to the sum of $145, and no objection has been made to the order in this respect; but the court denied the motion as to the remaining sum of $100, which portion of the Friester judgment the court, by its order, allowed to Hunter & Mallory, who prosecuted, as attorneys for Friester, the suit for false imprisonment; and the judgment and orders were affirmed in the district court. This petition in error was filed by Diehl to reverse the judgment in favor of *475 Friester, and to reverse so much of the order as denied to Diehl a set-off with respect to said sum of $100.
1. As to the sufficiency of the petition. It contains in detail the facts as to the suit of Diehl against Friester, the application of Diehl, for an injunction, the allowance of the injunction, the application for and issuing of an attachment, and the arrest, assessment of fine, and imprisonment of Friester; and it contains, furthermore, an allegation that no undertaking was ever given for the injunction, but none that such prosecution for contempt was malicious and without probable cause.
In trespass for false imprisonment, the gravamen is the wnlawftbl act of the defendant. Case for malicious prosecution may be maintained where a proceeding is carried on maliciously and without probable cause. "While an action for malicious prosecution may be maintained, notwithstanding the plaintiff was imprisoned upon a perfectly valid judgment or order, an action for false imprisonment cannot be maintained where the wrung complained of is imprisonment in accordance with the judgment or order of a court, unless it appear that such judgment or order is void. And this distinction is as important now as under the former practice. Spice v. Steinruck, 14 Ohio St. 213.
This is an action for false imprisonment. If Friester was imprisoned in pursuance of a valid judgment and order, the petition does not contain facts sufficient to constitute a cause of action, and the judgment must be reversed. But, in our opinion, the judgment and order for imprisonment were void, for •the reason that Diehl never gave the undertaking for the injunction required by the statute. Civil Code, §§ 242, 245, 247; Rev. Stats. §§ 5576, 5579, 5581. And hence that the petition is sufficient.
This is not a case where a party, upon being informed that an injunction has been allowed to restrain him from doing a particular act, does the act before there is time to give such undertaking. What, if any, power the probate court has, in a case of that sort, to punish for contempt, is a question which we need not determine.
2. Did the court err in holding that Hunter & Mallori *476 should be preferred to Diehl as to $100 of the Friester judgment, and that, as to this amount, the set-off should be refused ?
The provisions of the statute relating to set-off, do not, iterms, apply to the set-off of one judgment against another on motion (Civil Code, §§ 26, 93, 97-99, 119; Rev. Stats. §§4993, 5071, 5075-5077, 5089), though doubtless those provisions will be applied whenever they are, in their nature, applicable to such motions. As the court say, in Holmes v. Robinson, 4 Ohio, 90, “ the practice of setting off one judgment against another, between the same parties, and in the same right, is ancient and well established.” Even the fact that the judgments are in different courts, one for a tort and the other on contract, and some of the parties in one case were not parties in the other, does not necessarily afford an insuperable objection to such set-off. But, as Gibson, C. J., observes (Ramsey’s Appeal, 2 Watts, 230), there is a fallacy in supposing that such set-off is a legal right. “ Judgments are set off against each other,” said he, “ not by force of the statute, but by the inherent power of the court immemorially exercised. . . An equitable right of setting off judgments, therefore, is permitted only where it will infringe on no other right of equal grade.” And see Love v. Freer, Wright, 412. “ Such power,” said Devens, J., in Ames v. Bates, 119 Mass. 397, “is only to be exercised upon careful consideration of all the circumstances of the transaction out of which the judgments arise, and in order to protect the just rights of parties.” “ The privilege of setting off judgments,” said Coleridge, J., in Simpson v. Lamb, 40 Eng. L. & Eq. 59, 7 E. & B. 84, “ is not an inherent incident of the suit, but is given by permission of the court, with reference to all the circumstances of the transaction.” And it has been recently held that where the sét-off is sought by motion, the matter so far rests in the discretion of the court that the refusal of an order for such set-off will not be reviewed on error. Chipman v. Fowle, 180 Mass. 352.
Guided by this view of the law, courts have refused to order such set-off, where by granting it the just rights of assignees would be disturbed. Ramsey’s Appeal, supra. So, it has been x-epeatedly held that where a debtor is entitled to hold a *477 judgment as property exempt from execution, the object of the law being, not to exonerate the debtor from the payment of his' debts, but “ to protect his family ” (Sears v. Hanks, 14 Ohio St. 298, 301), a set-off as to such judgment will not be ordered. Curlee v. Thomas, 74 N. C. 51; Duff v. Wells, 7 Heiskell, 17 ; Wilson v. McElroy, 32 Penn. St. 82 ; Beckman v. Manlove, 18 California, 388. And see Comer v. Dodson, 22 Ohio St. 622; McConville v. Lee, 31 Ohio St. 447; Rev. Stats. §§ 5433, 5441 ; Thompson on Exemp. § 893. And it has likewise been held in many cases, that a judgment will not be set off against another judgment, to the prejudice of an attorney who contributed by his skill and services in obtaining it. Simpson v. Lamb, supra; Johnson v. Taylor, 1 Disney, 169 ; Ames v. Bates, supra; Carpenter v. Sixth Av. Ry., 1 Am. L. Reg. N. S. 410, 424; Pewy v. Chester, 53 N. Y. 240; Zogbaum v. Parker, 55 N. Y. 399.
Although an attorney may contribute his skill and services. in obtaining a judgment for his client, he has, in this state, no lien on such judgment for his fees, where there is no agreement for such lien known to the judgment debtor, in the sense that such judgment debtor may not effectually satisfy such judgment by payment of the amount thereof to the judgment creditor; nor do we doubt the right of parties to compromise any pending suit, in opposition to the wish of their attorneys. Put, on the other hand, an attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, or upon a sum of money which he has collected, and under some circumstances courts will aid him in securing or maintaining such claim. Thus he will be protected in retaining his fee out of money which he has collected for his client. Longworth v. Handy, 2 Handy, 75. He will be protected in his claim as attorney on a fund in the hands of a receiver, (Olds v. Tucker, 35 Ohio St. 581), or in court. Ingham v. Lindemann, ante, 218. This protection, it will be seen from the cases cited, will be afforded in many other cases. And why should not Hunter & Mallo.ry be protected to the same extent as if Diehl had paid the money into court ? The motion for set-off was, as we have seen, an appeal to the equitable power of *478 the court, and where such appeal is made, the court looks not merely to the form the transaction is made to assume, but to its substance. The attorneys contributed, undoubtedly, in obtaining the judgment. The court may have properly charged, under authority of Finney v. Smith, 31 Ohio St. 529 ; Stevenson v. Morris, ante, 10, that if the jury found that Diehl was actuated by malice in causing Friester’s arrest and imprisonment, they might, in estimating compensatory damages, allow to the plaintiff reasonable counsel fees in the prosecution of his action. If such was the fact, and attorney’s fees were thus included in the verdict and judgment, upon what principle could Diehl be entitled to them, to the exclusion of the attorneys, who had not been paid ?
Finally, it is said that the attorneys did not claim an allowance by the court of such fee, and that the fee was allowed without evidence. But we do not think this view is warranted. The record does not contain the evidence, nor does it, in terms, show any application for such allowance. But error will not be presumed. The cases were both tried in the same court and doubtless before the same judge. The record shows that nothing could be collected from Friester by process, and it may properly be assumed that when the motion for set-off was presented, Hunter & Mallory suggested to the court that they had not been paid their fees, and that the only way they could secure compensation was by an allowance out of the Friester judgment. While the record does not show what evidence was offered as to the value of their services, the proof was no doubt satisfactory to the court; and besides, as held in Ingham v. Lindemann, supra, the amount was in some degree to be determined by the judge before whom the services were rendered, from his own knowledge of their value. Perhaps, indeed, there was an agreement between Friester and his attorneys as to the amount of the fee and its lien, and that this was shown to the court. However, that may be, we hold that in any view there was no error in the courts, below of which Diehl can complain.

Judgment affirmed.